**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**RAY H.,**

      **Plaintiff,**

**vs.**                         **CIVIL ACTION NO. 3:24-CV-00705**

**LELAND DUDEK,**
Acting Commissioner Of Social Security,

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered December 10, 2024 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Motion for Judgment on the Pleadings along with his Brief in Support of Motion for Judgment on the Pleadings, and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision. (ECF Nos. 8, 7, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for entry of an award for benefits, or alternatively, remand (ECF No. 8); **GRANT** the

1

Commissioner's request to affirm the final decision (ECF No. 9); **AFFIRM** the final decision; and

**DISMISS** this matter from this Court's docket for the reasons stated *infra*.

## Procedural History

The Plaintiff protectively filed his application for SSI on October 8, 2021, alleging disability since June 12, 2021[1] due to osteoarthritis, memory loss, panic attacks, anxiety, and depression (Tr. at 17, 92). His claim was initially denied on March 8, 2022 (Tr. at 17, 985-90) and again upon reconsideration on November 29, 2022 (Tr. at 17, 102-107). Thereafter, he filed a written request for hearing on December 5, 2022 (Tr. at 125).

An administrative hearing was held on September 7, 2023 before the Honorable Paul Kovac, Administrative Law Judge ("ALJ") (Tr. at 36-63). On September 18, 2023, the ALJ entered an unfavorable decision. (Tr. at 14-35) Thereafter, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 174-177) The ALJ's decision became the final decision of the Commissioner on October 11, 2024 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On December 9, 2024, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed a Motion for Judgment on the Pleadings along with a Brief in Support of Motion for Judgment on the Pleadings (ECF Nos. 8, 7), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 9). Consequently, this matter is fully briefed and ready

---

[1] On April 21, 2022, this Court affirmed the June 11, 2021 final decision of the Commissioner denying the Plaintiff's prior applications for DIB and SSI. (Tr. at 100, 64-84)

for resolution.

**Plaintiff's Background**

The Plaintiff was 51 years old as of the application filing date and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. § 416.963(d). (Tr. at 30) He has a high school education, and has past relevant work as a blaster helper and truck driver in the coal mining industry. (Tr. at 41-42)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

4

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since October 8, 2021, the application date. (Tr. at 19, Finding No. 1) At the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: cervical degenerative disc disease with radiculopathy; history of closed fracture lumbar vertebra; and chronic pain syndrome. (Id., Finding No. 2) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24, Finding No. 3) The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except:

> he is limited to standing and walking for 4 hours. He must have the ability to alternate to standing for 5 minutes after every 25 minutes of sitting. He must have the ability to alternate to sitting after every 25 minutes of standing and walking. During times in which this individual alters position, he is still capable of remaining on task. He can operate hand controls with the left hand frequently. He can perform occasional reaching overhead to the left, and occasionally reaching overhead to the right. For all other reaching he can reach frequently to the left, and can reach frequently to the right. He is limited to frequent handling, fingering and feeling with the left hand. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, never crawl. The claimant can never work at unprotected heights, never moving mechanical parts, in extreme cold occasionally, and in vibration occasionally.

(Tr. at 24-25, Finding No. 4)

6

At step four, the ALJ found the Plaintiff is incapable of performing past relevant work. (Tr. at 29, Finding No. 5) However, in addition to his age, education, the immateriality of the transferability of job skills, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that the Plaintiff can perform. (Tr. at 30, Finding Nos. 6-9) Finally, the ALJ determined the Plaintiff has not been under a disability since October 8, 2021. (Tr. at 31, Finding No. 10)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff argues that the ALJ erred in several respects: first, he failed to fully develop the medical evidence as it relates to the Plaintiff's physical and mental impairments, and substituted the opinions provided by the Plaintiff's treating providers with those provided by non-treating, reviewing experts. (ECF No. 7 at 12, 16) The Plaintiff's work history and hearing testimony shows that he is more limited than the ALJ found; the vocational expert testified that if the Plaintiff had marked limitations several areas of mental functioning, all work would be precluded. (Id. at 13-15) The ALJ also erred by failing to consider and evaluate the Plaintiff's claim under the combination of impairments theory, which shows that he is disabled. (Id. at 15-16) The Plaintiff asks that the final decision be reversed and he be awarded benefits, or alternatively, remand this matter for further proceedings. (Id. at 16)

In response, the Commissioner asserts that the ALJ evaluated the entirety of the evidence appropriately, and the Plaintiff merely relies on his self-reported symptoms without identifying any gaps in the evidence the ALJ failed to consider or develop; the Plaintiff's conclusory arguments on this point has been rejected by this Court. (ECF No. 9 at 9-11) Additionally, the ALJ properly evaluated the Plaintiff's symptoms against the record; the vocational expert's testimony

supported the ALJ's finding that the Plaintiff remains able to perform other work. (Id. at 11-12) The Commissioner further contends that the Plaintiff fails to show how he met any specific Listing at step three, only through conclusory statements, and that the ALJ appropriately and explicitly determined that the severity of the Plaintiff's impairments, singly and in combination, did not meet or medically equal Listing criteria. (Id. at 12-14) The Commissioner also points out that the ALJ appropriately evaluated the Plaintiff's treating source opinion evidence and explained why they were unpersuasive. (Id. at 15) Finally, the Commissioner states that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 16)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to the Plaintiff's arguments and discusses it below.

Summary of Relevant Medical Evidence:

The ALJ observed that the Plaintiff has a history of neck and back pain. In May 2021, the month before his alleged onset date, diagnoses of cervical disc disorder with radiculopathy and history of closed lumbar vertebra fracture with sequelae were noted (Tr. at 25, 297-298). On examination, the Plaintiff had cervical tenderness to palpation with some limitation in range of motion on flexion/extension; his lumbar/thoracic spine was tender to palpation, with some decrease in range of motion; and seated straight leg raise was positive, with mild (4/5) weakness (Tr. at 25, 297). He was referred to James Walker, D.O., an osteopath (Tr. at 25, 298). Dr. Walker noted the Plaintiff's complaints of neck and back pain, and clinical findings were unchanged;

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

records now included a diagnosis of chronic pain syndrome (Tr. at 25, 302-303). The Plaintiff continued to be treated conservatively with medications, including narcotic pain medication, and was advised to return in three months (Tr. at 25, 303).

The Plaintiff returned to Dr. Walker in February 2022, and denied engaging in any strenuous or sporting activities, but he indicated he was fully functional regarding daily activities (Tr. at 25, 409). He reported he was able to care for himself, denied any difficulty walking or climbing stairs, reporting that he walks without restrictions, and did not have any difficulty doing errands alone (Id.). There were no documented subjective complaints, with the Plaintiff stating only that he needed to refill medications and have labs drawn, with "no other concerns at this time" (Tr. at 25, 411). Exam findings were essentially the same, adding only a report of moderate sensory impairment of diminished protective sensation in the ulnar distribution bilaterally (Id.). No changes were made to his medications, and he was not referred for any specialized testing (Tr. at 25, 412). Records later that month show that the Plaintiff again reported occasional exercise, just no strenuous exercise; he also continued to report no difficulties with activities of daily living, including walking without restrictions, and clinical findings and medications remained unchanged (Tr. at 25, 471-473).

Dr. Walker's May 2022 records were similar: despite reporting neck and back pain, the Plaintiff simultaneously reported occasional exercise and denied any difficulty walking or climbing stairs, caring for his personal needs, doing errands alone, and he continued to report walking without restriction (Tr. at 25, 437-438, 439). Examination findings continued to show cervical and lumbar tenderness with some decreased range of motion and 4/5 strength in an unspecified area, and moderate sensory impairment in the ulnar distribution (Tr. at 25-26, 439). No

changes were made in his treatment regimen, and he was not referred for any diagnostic testing (Tr. at 26, 439). August 2022 records indicate consistent findings, including reports of activities (including walking without restriction), and no treatment changes (Tr. at 26, 487-488). The Plaintiff received a flu vaccine in October 2022, with no documented clinical findings or complaints at that time (Tr. at 26, 481-482). He returned to Dr. Walker on November 3, 2022, with no neck or back complaints, and clinical neck and back findings and treatment remained essentially the same. (Tr. at 26, 477-479). EMG studies reviewed in December 2022 did not report any evidence of cervical radiculopathy, rather specifically noting left ulnar entrapment or radiculopathy was "not demonstrated" (Tr. at 26, 494). February 2023 records were again virtually unchanged as to clinical findings, with reports of no difficulty climbing stairs and an ability to "walk without restriction," and consistent, conservative treatment (Tr. at 26, 471-473).

The most recent records from Dr. Walker in June 2023 indicated the Plaintiff had no chief complaints (Tr. at 26, 463), although he sought refills of medications and complained of right shoulder pain (Tr. at 26, 466). He continued to report no difficulties in activities of daily living and the ability to walk without restrictions (Tr. at 26, 465). An exam noted cervical and lumbar tenderness with some limitations in range of motion, positive straight leg raise, and mild weakness (*i.e.*, findings virtually unchanged throughout the period at issue), and there was no change to his medication regimen (Tr. at 26, 466).

In terms of mental health, the Plaintiff's symptoms have been treated with conservative, consistent medication management by Jennifer Rice, APRN, PMHNP-BC (*See, e.g.*, Tr. at 375 ("doing well on current med. . . . He feels stable on current med no concerns voiced"), Tr. at 381 ("Continue current treatment plan"); Tr. at 383 ("States his overall outlook and mood improved .

. . He would like to stay on same medications at this time. He has no concerns voiced."); Tr. at 391

("He is pleasant and cheerful   He has no concerns voiced this visit, will continue same meds.");

Tr. at 399 ("Depression has been doing well lately . . . Overall moods have been good."); Tr. at

403 ("States he is doing well."); Tr. at 419 ("States he is doing well on current meds  I did educate

him that if needed, we could make adjustments, he verbalizes understanding, but is overall happy

at current doses."); Tr. at 518 ("He is pleasant and cheerful   No med changes needed this visit");

Tr. at 522 ("Doing well . . . He is happy   he is enjoying his life"); Tr. at 526 ("He feels stable on

current medications, with no side effects, he has no concerns voiced, no med changes needed.")).

At his most recent visit with Nurse Rice in August 2023, it was noted the Plaintiff was "doing well

on current meds. . . . He is happy, does things he enjoys   Moods are stable" (Tr. at 534). The

Plaintiff voiced no concerns, and no medication changes were needed (Id.).

   <u>Opinion Evidence and Prior Administrative Findings:</u>

   On May 3, 2022, Ms. Rice completed a "Mental Residual Functional Capacity

Assessment" form on the Plaintiff's behalf (Tr. at 28, 428-429). She opined that the Plaintiff was

moderately limited in his ability to maintain attention/concentration for extended periods, to work

in coordination/close proximity with others, to make simple work-related decisions, to get along

with co-workers, to respond appropriately to changes, and to complete a normal

workday/workweek without interruption from psychologically-based symptoms/perform at a

consistent pace without unreasonable rest periods; and has marked limitations in his ability to

interact with the general public, to accept instruction/respond appropriately to criticism, to ask

simple questions or request assistance, to travel in unfamiliar places/take public transportation, to

set realistic goals or make plans independent of others; and that he would miss about three days

per month (Id.). Ms. Rice further opined that the Plaintiff has been disabled since June 2021 (Tr. at 429).

On August 15, 2023, Dr. Walker completed a "Residual Physical Functional Capacity Evaluation" form and indicated that the Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk 2 hours during an eight-hour workday; sit 2 hours during an eight-hour workday; alternate sitting/standing every 20-30 minutes; and that the Plaintiff's ability to push/pull was limited in both upper and lower extremities (Tr. at 28, 538). Dr. Walker further opined that the Plaintiff could never climb ramps, stairs, ladders, ropes, scaffolds; never balance or stoop; occasionally kneel, crouch, and crawl; was limited in reaching in all directions, handling, fingering, and feeling; limited in hearing; avoid moderate exposure to extreme cold, extreme heat, humidity, fumes, odors, and hazards; avoid any exposure to noise and vibration; and "total avoidance (safety)" of machinery and heights (Id.).

On March 3, 2022, Jeff Boggess, Ph.D., reviewed the record at the initial level of review and determined the Plaintiff's mental impairments were nonsevere and that he had mild limitations in all four domains of mental functioning; on November 17, 2022, at the reconsideration level of review, John Todd, Ph.D., affirmed Dr. Boggess' findings (Tr. at 29, 95-96, 104).

On March 7, 2022, Uma Reddy, M.D., reviewed the record at the initial level of review and determined the Plaintiff had the RFC to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; had no limitations in pushing/pulling with both upper and lower extremities; could stand/walk about 6 hours in an eight-hour workday; sit about 6 hours in an eight-hour workday; could occasionally climb ramps, stairs, ladders, ropes, scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold and vibration; and avoid

even moderate exposure to hazards (machinery, heights, etc.); on November 23, 2022, Narendra Parikshak, M.D., reviewed the record at the reconsideration level of review and affirmed Dr. Reddy's findings (Tr. at 29, 97-98, 104-105).

Plaintiff's Function Reports:

The Plaintiff reported that he cares for his personal needs, can prepare simple meals like sandwiches and frozen dinners, performs light housework, drives, and that he takes care of a "little house dog" with help from his mom (Tr. at 223-225, 242). He also reported that he shops in stores and manages his own finances, including paying bills and counting change (Tr. at 225, 243). His interests include reading and watching television, and he socializes occasionally; he regularly attends doctor visits and the grocery store without reminders, although his mom or a friend goes with him; he indicated that he does not have any problems getting along with family, friends, neighbors, or others (Tr. at 226, 244). He indicated that he does not follow written instructions well, but does "ok" or "fine" with spoken instructions and with getting along with authority figures; he had not been fired or laid off from a job because of getting along with other people (Tr. at 227, 245).

**The Administrative Hearing**

Plaintiff's Testimony:

The Plaintiff testified that he was in a motor vehicle accident 10 years earlier and sustained neck and back fractures (Tr. at 43). He said he did not have surgery but has nerve damage in his neck and back and chronic pain in his neck (Id.). He stated he has radiculopathy, mainly in his left hand, with tingling when he reaches or uses his hands (Id.). He said it is difficult to reach overhead with his left arm (Tr. at 43-44). He reported he takes pain medication (Tr. at 44). He also reported

he uses a TENS unit for back pain but has not had physical therapy (Tr. at 47). He said he has problems standing and walking and can only walk about half-a-block to a block and stand 15-20 minutes, and can sit 20-30 minutes, then has to change position for 20 minutes due to back pain (Tr. at 47-48). He stated his pain medication makes him "kind of drowsy" and affects his ability to concentrate (Tr. at 48). He said his pain also impacted his concentration, pace, memory, and desire to be around others, and caused him to work at a slower pace and get offtrack (Tr. at 50). The Plaintiff also testified that he has problems making decisions on his own, following instructions, or is able to handle someone tell him what to do on a daily basis or criticize him if he did not do something properly, or set his own goals and achieve them (Tr. at 52-53). He also confirmed that he had not had any inpatient psychiatric exams, and he thought he was "doing good" with respect to his depression and anxiety (Tr. at 46).

Vocational Expert's Testimony:

The vocational expert testified that the Plaintiff's past relevant work, which is paramount to a stripping shovel operator, is classified as medium work, but as the Plaintiff performed it, very heavy; the Plaintiff's other past relevant work is a rock truck driver, also classified as unskilled and medium, but as actually performed, very heavy (Tr. at 55). Under the controlling RFC, *supra*, the vocational expert opined that while the Plaintiff would be unable to perform his past relevant work, he can perform other positions in the national economy: first, as a ticket taker, unskilled, light work; second, as a cashier, with reduced numbers due to the modified light RFC; and finally, as a gate guard, which the DOT classifies as semiskilled, but he vocational expert testified this job functions as unskilled based on her professional opinion (Tr. at 55-57). The vocational expert stated that her testimony was consistent with the DOT, although the DOT does not directly address

14

employee overhead reaching, ladders, ropes, and scaffolds, or the sit stand option or modified light, or unilateral use of either one of the extremities, but is based on her professional experience, education, and research (Tr. at 57).

Assuming the hypothetical individual had the following mental limitations, including only occasional interaction with supervisors, coworkers, and the public, the vocational expert again stated the individual could not perform the Plaintiff's past work, nor any of the light exertional jobs identified earlier because they require frequent to constant interaction with the public (Tr. at 57-58). The vocational expert testified that she could identify other jobs the Plaintiff could perform at the sedentary exertional level, but the combination of the unskilled work and the reduction in physical capacity and the sit stand option preclude full light work (Tr. at 58).

In response to questioning by the Plaintiff's attorney, the vocational expert opined that if the hypothetical individual were limited to standing only two hours in an eight-hour workday and sitting only two hours in an eight-hour workday, all light jobs would be precluded as this would be a straight sedentary RFC; she also testified that if the individual had a marked ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to travel in unfamiliar places, and to set realistic goals, and to make plans independently of others, all competitive employment would be eliminated (Tr. at 61).

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

## Analysis

As noted *supra*, the Plaintiff argues that the ALJ failed in his duty to develop the record with respect to several alleged impairments[3], and that he "failed to consider the opinions of longtime treating physicians James Walker, DO, his primary care physician and Jennifer Rice, APRN of Prestera Center. (ECF No 7 at 16) With respect to the Plaintiff's contention that the ALJ "failed to consider" this medical opinion evidence as to his limitations, the undersigned **FINDS** this argument lacks merit.

---

[3] The Plaintiff specified that the following impairments preclude his ability to engage in substantial gainful activity: chronic cervical and lumbar strain; cervical disc disorder with radiculopathy; chronic low back pain; closed fracture lumbar vertebra; chronic pain syndrome; hearing impaired; bilateral carpal tunnel syndrome; osteoarthritis; cognitive disorder; major depression; panic attacks; anxiety disorder; and left shoulder rotator cuff syndrome. (ECF No. 7 at 12)

In his written decision, the ALJ explicitly addressed the opinions provided by Ms. Rice (Tr. at 28, 427-433) and Dr. Walker (Tr. at 28, 538). Additionally, the ALJ considered the opinions provided by state agency medical and psychological consultants (Tr. at 29, 92-99, 102-107). The ALJ also discussed the relevant medical evidence of record throughout the written decision, including the treatment records identified *supra* (Tr. at 19-29). The ALJ did note, however, that the record contains medical opinions rendered prior to and address dates prior to the period at issue, and that he did not address those opinion "as they are not material to the period at issue and as there have been final adjudications at the District Court level regarding those periods." (Tr. at 29)

The Duty to Develop the Evidence:

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim in order to determine if it met the requirements in the listings of impairments amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is the Plaintiff's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled." Thus, the Plaintiff is responsible for providing medical evidence

17

to the Commissioner showing that he has an impairment, further, the Regulations are clear that this responsibility is ongoing at each level of the administrative review process. Id. The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as the Plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). In this case, the Plaintiff was represented by counsel and the ALJ has the right to assume that his counsel was presenting the strongest case for benefits. See Laney v. Astrue, 2011 WL 11889, at *11 (S.D.W. Va. Jan. 4, 2011) (Eifert, M.J.) (citing Nichols v. Astrue, 2009 WL 2512417, at *4 (7th Cir. 2009). An ALJ's duty to develop the record does not require him to make specific inquiries into the Plaintiff's treatment modalities or search for cumulative evidence; his duty is to obtain sufficient evidence upon which he can render an informed decision. Id. (internal citations omitted).

The Plaintiff bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, the Plaintiff "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

With respect to the Plaintiff's assertion that the ALJ failed to develop the evidence concerning his numerous impairments (See footnote 3, *supra*), it is noted that the Plaintiff neither specifies what evidence was inadequately fleshed out by the ALJ, nor what evidence specifically supports his argument that he is disabled. As pointed out by the Commissioner (ECF No. 9 at 9-10), this Court has previously rejected such arguments:

> [Plaintiff] does not identify any gaps in the record or further evidence that the ALJ should have developed.  []He cites a legal standard and does not articulate how it applies to h[is] case. [Plaintiff's] conclusory assertion that the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. Indeed, the Court should not be tasked with researching and constructing [Plaintiff's] arguments for h[im]. [Plaintiff] fails to specify any deficiencies in the record . . . [Plaintiff] does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on h[is] disability applications. [Plaintiff] lists pieces of medical evidence in h[is] brief, yet []he does not explain how any of it prompted further investigation.

*Hensley v. Kijakazi*, No. 3:21-CV-00178, 2021 WL 5871542, at *13-14 (S.D. W. Va. Nov. 23, 2021), *report and recommendation adopted*, No. CV 3:21-0178, 2021 WL 5867126 (S.D. W. Va. Dec. 10, 2021); *see also Jason L. v. O'Malley*, No. 3:23-CV-00307, 2024 WL 1152405, at *11 (S.D. W. Va. Feb. 29, 2024), *report and recommendation adopted*, No. CV 3:23-0307, 2024 WL 1149282 (S.D. W. Va. Mar. 15, 2024) (quoting *Hensley*).

For starters, it is important to recognize that this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)); see also Call v. Berryhill, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). To the extent that the Plaintiff

complains that the ALJ may not have specifically mentioned each of his alleged impairments[4], he stated that he considered all the evidence of record. (See Tr. at 17, 27 ("After careful consideration of all the evidence. . ."); Tr. at 19, 24 ("After careful consideration of the entire record. . ."). Having so stated, this court should "take [him] at [his] word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."). Moreover, despite the Plaintiff's listing the various diagnoses and symptoms related thereto in his brief, this is not the litmus test for disability, as it is also well known that diagnoses alone do not establish disability, because there must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (internal citations omitted).

Nevertheless, despite the Plaintiff's assertion otherwise, the ALJ considered the medical evidence (and opinions) from the treating and examining sources of record, including medical

---

[4] Though the Plaintiff does not identify or specify any one impairment that the ALJ failed to mention or consider, it appears that the ALJ took great pains to mention each of the Plaintiff's alleged impairments and considered the symptoms related thereto and how they affected the Plaintiff's overall functioning in his review of the medical and other evidence of record in both the RFC assessment, and at the second step of the sequential evaluation process (See Tr. at 19-24).

evidence that predated the alleged onset date (See Tr. at 21, 25).[5] In addition, the ALJ also expressly considered the Plaintiff's and the vocational expert's testimonies (Tr. at 20, 23, 24, 26-27, 29-31). Indeed, when asked by the ALJ at the beginning of the hearing if there was a complete record in this case, the Plaintiff's attorney responded in the affirmative. (Tr. at 40; see also, Tr. at 17 ("The claimant submitted or informed the [ALJ] about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 416.1435(a))." In short, the Plaintiff has failed to demonstrate any paucity in the evidence that would have warranted further development of the record.

Accordingly, the undersigned **FINDS** that the Plaintiff's contention that the ALJ erred by failing to develop the record is without merit.

<u>Consideration of the Combined Effect of Impairments:</u>

In a conclusory fashion, the Plaintiff asserts that the medical evidence confirms that the combined effect of his severe physical and mental impairments rendered him totally disabled.[6] (ECF No. 7 at 15) The Plaintiff does not specify which impairment would individually warrant a

---

[5] The ALJ considered not only mental health records from April 2021 which indicated the Plaintiff's mental status findings were "overall benign" (Tr. at 21, 371-406), but also the Plaintiff's family doctor's May 2021 medical records concerning his treatment of the Plaintiff's neck and back pain issues (Tr. at 25, 294-363).

[6] Because the Plaintiff provides no further argument or explains how the ALJ erred on this ground, to this extent, the Plaintiff has essentially waived this challenge on appeal. <u>Erline Co. S.A. v. Johnson</u>, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); <u>accord Sedghi v. PatchLink Corp.</u>, 440 Fed. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue."); see also, *Adkins v. Colvin*, No. 3:14-27920, 2016 WL 854106, at *9 (S.D.W. Va. Feb. 11, 2016), *report and recommendation adopted by* 2016 WL 868342 (S.D.W. Va. Mar. 4, 2016) (affirming where the claimant failed to identify the listing he allegedly met in combination); *Raines v. Kijakazi*, No. 3:21- 0045, 2021 WL 4258733, at *12 (S.D.W. Va. Aug. 27, 2021), *report and recommendation adopted by* 2021 WL 4255625 (S.D.W. Va. Sept. 17, 2021) (affirming where the claimant did not specify what evidence was "inadequately fleshed out" in evaluating her impairments in combination, nor what evidence "specifically supports" *per se* disability).

21

disability finding, instead, he again emphasizes that the ALJ failed to consider the opinion evidence from his "longtime treating physicians": Dr. Walker and Ms. Rice. (Id.)

The Regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. § 416.923(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on the Plaintiff's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. § 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, the Plaintiff must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531.  A claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

As noted *supra*, the ALJ found that none of the Plaintiff's severe impairments, even their combined effects, met Listing requirements at the third step of the sequential evaluation process. (Tr. at 24) The ALJ first evaluated the Plaintiff's multiple musculoskeletal impairments under Sections 1.15, 1.18, and 1.19, noting there was no evidence of neuro-anatomic (radicular distribution) with symptoms, clinical findings, diagnostic support, and severity of functional limitations requiring need for an assistive device that caused limitation in the Plaintiff's use of one upper extremity to independently initiate, sustain, and complete work-related activities (Id.)

Earlier in the written decision, the ALJ also examined the evidence relating to the Plaintiff's mental impairments, finding that not only are these impairments nonsevere, but also result in only mild limitations in each of the broad areas of functioning. (Tr. at 21-24) The ALJ discussed the relevant medical and other evidence of record that supported his findings, including treatment records from the Plaintiff's primary care provider, Dr. Walker dated November 3, 2021 and May 5, 2022 through June 14, 2023; treatment records provided by Ms. Rice at the Prestera Center dated July 15, 2020 through December 15, 2021, March 9, 2022, and June 8, 2022 through August 2, 2023 (Tr. at 21-24, 364-370, 371-406, 419-422, 423-426, 427-433, 461-511, 512-537); the Plaintiff's Function Report from December 8, 2021 (Tr. at 23-24, 222-229); as well as the Plaintiff's hearing testimony (Tr. at 21, 23-24). Significantly, this evidence does nothing to advance the Plaintiff's argument that the combined effects from these impairments warrant a disability finding, as the clinical findings therein are largely unremarkable: as noted by the ALJ's summarization of the mental health records, discussed *supra*, the ALJ observed that the Plaintiff's testimony as it related to his mental impairments "is unsupported by and inconsistent with the weight an longitudinal view of the objective medical evidence" and the "longitudinal view of

mental heal[th] records shows a pattern of very good response to medication, to consistently admittedly improving symptoms, and to essentially normal clinical mental status findings[.]" (Tr. at 23)

To the extent that the Plaintiff takes issue with the ALJ's evaluation of his subjective complaints, it is noted that recently the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4ᵗʰ Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. Essentially, the Fourth Circuit has once again cautioned against an ALJ's analysis must not primarily rely upon the lack of objective medical evidence as the reason for discounting a claimant's complaints. As demonstrated by the foregoing, this did not occur here: the ALJ did not select only those portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments. The ALJ also examined both aggravating and mitigating factors with respect to the Plaintiff's

subjective complaints which included his testimony, his reports to providers, the objective medical evidence, as well as the opinion evidence. The law does not require one to be pain-free or experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, the ALJ provided a thorough and adequate analysis of the Plaintiff's subjective complaints that complied with the pertinent Regulations and case law – it is notable that the gravitas behind the ALJ's evaluation of the Plaintiff's subjective complaints was not over-reliance on the objective medical record, but with the Plaintiff's own inconsistent and uncorroborated statements.

Clearly, the ALJ considered the medical evidence as well as the Plaintiff's reported symptomology from the period at issue. As discussed *supra*, the ALJ did consider this evidence in making his third step determination (as well as the second step determination and in the subsequent steps in the sequential evaluation process), thus, to the extent that the Plaintiff argues that the ALJ failed to consider and evaluate the combined effects of his impairments, the undersigned **FINDS** this argument lacks merit. Additionally, to the extent that the Plaintiff contends the ALJ failed to consider the medical records provided by his treating and examining providers, the undersigned **FINDS** this contention also lacks merit. Finally, to the extent that the Plaintiff asserts the ALJ failed to consider his subjective complaints, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of the Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, and that the ALJ's conclusion that the Plaintiff's

statements were inconsistent with the evidence of record complied with the applicable law, is also supported by substantial evidence. (See, Tr. at 23-24, 27)

Evaluation of Opinion Evidence:

The Plaintiff also argues that the ALJ "substituted" the opinions from his treating providers with those provided by non-examining physicians, ostensibly because the ALJ did not adopt the opinions determining the Plaintiff was disabled or was far more limited than the RFC assessment (ECF No. 7 at 16). In the written decision, the ALJ explicitly applied the regulatory framework pursuant to Section 416.920c to claims filed after March 27, 2017: "[a]s for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), *including those from medical sources*." (Tr. at 27) (*emphasis* added) Here, the ALJ properly applied the pertinent Regulation, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record. Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). 20 C.F.R. § 416.920c(b). Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. When discussing his finding about whether an opinion is persuasive, the ALJ need only explain how he considered the "the most important factors" of supportability and consistency. Id. § 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. § 416.920c(b)(2)-(3).

In this case, the ALJ appropriately recognized that pursuant to 20 C.F.R. § 416.927(d), he

26

found Ms. Rice's opinions, discussed *supra*, were "unpersuasive", specifically noting that they were unsupported "by the very benign contemporaneous treatment records included[7], which documented  overall positive subjective reports and essentially normal clinical mental status findings." (Tr. at 28, 427-433). The ALJ also observed that Ms. Rice's records noted that the Plaintiff declined to accept the offered medication increase, which indicated the Plaintiff is capable of making his own medical decisions. (Id.) The ALJ also noted that Ms. Rice's opinions were unsupported by the Plaintiff's family doctor records, which showed no evidence of significant clinical psychiatric abnormalities, including the Plaintiff's own reported range of activities. (Id.) While the ALJ found many of Dr. Walker's opined limitations "unpersuasive" as being unsupported by the "weight and longitudinal view of his own clinical findings", including the Plaintiff's own reports to this provider, the ALJ did find Dr. Walker's opinions that the Plaintiff could  occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and have unlimited exposure to wetness "generally persuasive", as they "are generally supported by a longitudinal view of the objective clinical and very benign diagnostic findings and are generally consistent with the other substantial evidence in the record, including the claimant's reported activities." (Tr. at 28, 538). Significantly, the ALJ found no evidence from the medical record that indicated the Plaintiff had serious difficulty hearing, as the Plaintiff reported no such difficulties in the medical records, including no difficulty climbing stairs and was able to "walk without restriction." (Id.) Additionally, the ALJ recognized that Dr. Walker did not identify to what extent the Plaintiff is

---

[7] The "Mental Residual Functional Assessment" form was accompanied by a Medication Management Note dated March 9, 2022, which indicated the Plaintiff reported "doing well", was compliant with treatment without any side effects reported from medications and Ms. Rice indicated the Plaintiff's mood was "okay", his affect appropriate, his attention/concentration was "focused", alert senses, recall normal, intact insight and judgment, and thought process within normal limits. (Tr. at 430-431)

limited in manipulative activities as required. (Id.)

The Regulations and pertinent case law support not only the ALJ's observations, but also, an RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. § 416.946(c); see Felton-Miller v. Astrue, 459 Fed. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). Further, to the extent the Plaintiff contends the ALJ should have adopted his treating sources' findings that he was essentially disabled, the Regulations expressly provide that the Commissioner is the final arbiter on such issues, and is under no obligation to give any special significance to the source for issues reserved to the Commissioner. See 20 C.F.R. § 416.927(d)(2), (d)(3).

Moreover, to the extent the Plaintiff takes issue with the ALJ's "substitution" of treating source opinions with those of non-examining sources who only reviewed "portions" of the Plaintiff's file (ECF No. 7 at 16), the undersigned notes that the Plaintiff fails to identify what records were missing from the state agency consultants' review. Additionally, the Plaintiff does not specify what, if any, prejudice was caused to him. There is no dispute that the State agency consultants reviewed the medical and other evidence of record did not review any of the medical records that were received since they issued their opinions. See, generally, *Hampton v. Colvin*, No. 1:14-cv-24505, 2015 WL 5304294, at *21-22 (S.D.W. Va. Aug. 17, 2015); *Starcher v. Colvin*, No. 1:12-cv-01444, 2013 WL 5504494, at *7 (S.D.W. Va. Oct. 2, 2013) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical ...

28

consultant's finding' ... is an update to the report required." Id. (quoting Chandler v. Comm'r of

Soc. Sec., 667 F.3d 356, 361 (3d Cir.2011)) (ellipses and brackets in original).

Nevertheless, despite the Plaintiff's contention that the ALJ impermissibly substituted the

opinions from treating sources with Agency source opinions, it is significant that the ALJ still only

found the State agency medical consultants opinions "generally persuasive", as they "do not reflect

the totality of the objective medical evidence, or appear to consider all the claimant's subjective

reports, which are addressed in the [RFC] above." (Tr. at 29)[8] Regardless, the ALJ evaluated the

State agency consultants' opinion evidence under the same legal standard as the Plaintiff's treating

sources, in compliance with the pertinent Regulations, as set forth *supra*.

Although the Plaintiff advocates for a different outcome, such are matters that involve

resolving the conflicting evidence of record, which is an evidentiary finding within the purview of

the ALJ. In short, though the Plaintiff may disagree with the ALJ's determination that he is not

disabled, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the

Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL

3741784, at *7. The ALJ's narrative of the record included the objective medical evidence,

including imaging, and clinical examination findings, as well as the other evidence of record,

including but not limited to the Plaintiff's own statements and testimony; the ALJ's thorough

discussion of all this evidence, and his ultimate determination that the Plaintiff remained capable

of light work with certain restrictions during the period at issue despite his subjective complaints,

---

[8] The ALJ found the State agency psychological consultants' opinions "persuasive" noting that their findings "are well supported by the generally benign clinical findings and generally positive subjective reports documented in a longitudinal view of the evidence during the period at issue." (Tr. at 29)

provided sufficient explanation allowing for meaningful judicial review. <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. <u>Id</u>. at 637. Accordingly, the undersigned **FINDS** the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

Finally, the undersigned **FINDS** that the Commissioner's final decision determining that the Plaintiff is not disabled from October 8, 2021 through the date of the decision is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 9), **AFFIRM** the final decision, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4ᵗʰ Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4ᵗʰ Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4ᵗʰ Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 9, 2025.



Omar J. Aboulhosn
United States Magistrate Judge